UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JOSEPH SHINE-JOHNSON,** *et al.*,

    **Plaintiffs,**

v.                                    Civil Action 2:20-cv-5919
                                 Judge Sarah D. Morrison
                                 Magistrate Judge Elizabeth P. Deavers

**MIKE DEWINE,** *et al.*,

    **Defendants.**

### ORDER AND REPORT AND RECOMMENDATION

This matter is now before the Court for an initial screen of Plaintiffs' Complaint, ECF No. 1-1, under 28 U.S.C. §§ 1915(e)(2), 1915A to identify cognizable claims and to recommend dismissal of Plaintiffs' Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A.  This matter is also before the Court on Plaintiffs' Motion to Appoint Counsel, ECF No. 4.

For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiffs' claims in their entirety.  That recommendation notwithstanding, Plaintiff Goodson is **ADVISED** that he has the right to file a separate action to pursue any claim(s) for medical deliberate indifference that he believes he may have.

The Court also **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for the Appointment of Counsel, ECF No. 4.

1

I.

According to the Complaint, Plaintiffs are sixteen inmates at Belmont Correctional Institution ("BCI") who each allege that Defendants are not adhering to proper social distancing and other public health-related protocols in light of the COVID-19 pandemic. (*See generally* ECF No. 1-1.) Plaintiffs are not proceeding as a putative class, but rather they assert individual claims against Defendants.[1] Specifically, Plaintiffs allege that "[a]ll incarcerated people are at a heightened risk of contracting the COVID-19 virus," that "[a]ll said Plaintiffs have contracted COVID-19 at least once and some twice and or are still experiencing the after effects of the virus," and "[a]ll [Plaintiffs] were denied treatment and quarantine because they did not exhibit a fever or labored breathing." (*Id.* at PAGEID ## 21, 29, ¶¶ 19, 59.) Plaintiffs allege that "[a]ll Defendants that are staff at [BCI] tested positive for COVID-19," and they claim that their injuries "were caused by the Defendants' lack of care." (*Id.* at PAGIED ## 28, 30, ¶ 51, 60.)

Plaintiffs allege that "[d]ue to the negligence and ['deliberate indifference'] [] of the health and safety of inmates, and the failures of [all] said Defendant(s') duties and [obligations], which created the unsafe environment [and] health conditions by overcrowding," Defendants have violated Plaintiffs' Eighth Amendment rights "by creating conditions that would create long term physical and mental health conditions," including death, due to COVID-19. (*Id.* at PAGEID # 27, ¶ 44.) Plaintiffs further allege that "[h]ad the said Defendants been in compliance[] with ACA standards and the Ohio Administrative Code, when the State of

---

[1] In Plaintiffs' Motion to Appoint Counsel, Plaintiffs submit that they "are similarly situated and the court could decide since the plaintiffs are of the same class, to proceed this case as a class action law suit." (ECF No. 4 at PAGEID # 103.) Plaintiffs' Complaint, however, is devoid of any allegations on behalf of a putative class. (ECF No. 1-1.) Therefore, to the extent Plaintiffs intend to assert claims on behalf of a class, the Complaint is deficient. Fed. R. Civ. P. 8(a).

2

Emergency occurred, [BCI] would have been better prepared to prevent and maintain the spread of COVID-19 within [BCI] and the community at large." (*Id.* at PAGEID # 27, ¶ 45.)

Plaintiffs bring this action against the following eleven (11) Defendants, each in their individual and official capacities: (1) Mike DeWine, Governor; (2) Amy Acton, State of Ohio Department of Health Director; (3) Annette Chambers-Smith, Director of the Ohio Department of Rehabilitation and Corrections ("ODRC"); (4) Ernie Moore, Deputy Director of the ODRC; (5) Eddy Bobby, Regional Director of the ODRC; (6) Dr. Eddy Andrews, Medical Director of the ODRC; (7) Karen Stanforth, Chief Medical Inspector; (8) David Gray, Warden of BCI; (9) BCI Healthcare Administrator Murphy; (10) Patrick Haley, Institutional Inspector for BCI; and (11) BCI Unit Manager Taylor. (*Id.* at PAGEID ## 19-20, ¶¶ 4-15.) Plaintiffs seek the following relief: (a) a declaration that "the acts [and] omissions described herein [violated] Plaintiff[s'] rights under the Constitution [and] laws of the United States"; (b) a preliminary and permanent injunction "ordering all said Defendants . . . to eliminate the overcrowding of inmates and reduce the population to the ACA standards for the Institution to which inmates are incarcerated"; and (c) injunctive relief "to provide a compassionate release to said Plaintiffs from custody and or allow for release with sanctions until all safe prison conditions are met and COVID-19 pandemic subsides." (*Id.* at PAGEID # 31, ¶¶ 71-73.)

## II.

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490

U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)[2] as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> \* \* \*
>
> (B) the action or appeal--
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or . . . .

28 U.S.C. § 1915(e)(2)(B)(i) & (ii); *Denton*, 504 U.S. at 31. Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

---

[2] Formerly 28 U.S.C. § 1915(d).

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III.

Plaintiffs bring their claims against Defendants under 42 U.S.C. § 1983, which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

*Id.* In order to proceed under Section 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges,

or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir.1983), *rev'd and remanded sub nom*, *Brandon v. Holt*, 469 U.S. 464 (1985). As a general rule, a plaintiff proceeding under Section 1983 must allege that the deprivation of his rights was intentional or at least the result of gross negligence. *See Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Mere negligence is not actionable under Section 1983. *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

Here, Plaintiffs bring their claims against Defendants in their official and individual capacities. (ECF No. 1-1 at PAGEID # 20, ¶ 15 ("Each of these Defendants is sued and in their own individual and official capacity.").) The Court will address each type of claim in turn.

### A. Official Capacity Claims

"'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' which is 'no different from a suit against the State.'" *McCoy v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The Eleventh Amendment of the United States Constitution operates as a bar to federal court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983); *Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). "It is well established that § 1983 does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, No. 10-2185, 2013 WL 3455488, at *3 (6th Cir. July 10, 2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Here, however, Plaintiffs do not seek monetary damages. (*See* ECF No. 1-1 at PAGEID # 31, ¶¶ 71-73.)

There is an exception to the state sovereign immunity rule, "if an official-capacity suit seeks only prospective injunctive or declaratory relief." *Shine-Johnson v. Gray*, No. 2:19-cv-5395, 2020 WL 3036072, at *3 (S.D. Ohio June 5, 2020) (citing *Cady v. Arenac Cty.*, 574 F.3d 334, 344 (6th Cir. 2009); *Papasan v. Allain*, 478 U.S. 265, 276 (1986)); *see also Mitchell v. Ohio State Univ.*, No. 2:19-cv-4162, 2020 WL 5250459, at *6 (S.D. Ohio Sept. 3, 2020). Here, Plaintiffs seek: (a) a declaration that "the acts [and] omissions described herein [violated] Plaintiff[s'] rights under the Constitution [and] laws of the United States"; (b) a preliminary and permanent injunction "ordering all said Defendants . . . to eliminate the overcrowding of inmates and reduce the population to the ACA standards for the Institution to which inmates are incarcerated"; and (c) injunctive relief "to provide a compassionate release to said Plaintiffs from custody and or allow for release with sanctions until all safe prison conditions are met and COVID-19 pandemic subsides." (ECF No. 1-1 at PAGEID # 31, ¶¶ 71-73.) Accordingly, the exception to the state sovereign immunity rule may apply. The Court will analyze Plaintiffs' claims to determine if the exception applies to any of the Defendants.

### 1. Defendant DeWine

Plaintiffs' allegations against Defendant DeWine are limited. At the outset, Plaintiffs allege that Defendant DeWine "announced the existence of COVID-19's community spread . . . and restricted large gatherings within Ohio." (ECF No. 1-1 at PAGEID # 20, ¶ 16.) Plaintiffs then allege that Defendant DeWine, along with the other Defendants, violated O.R.C. § 2921.44, which states in relevant part:

> (C) No officer, having charge of a detention facility, shall negligently do any of the following:
>
> > (1) Allow the detention facility to become littered or unsanitary;
> >
> > (2) Fail to provide persons confined in the detention facility with adequate food, clothing, bedding, shelter, and medical attention;

7

> (3) Fail to control an unruly prisoner, or to prevent intimidation of or physical harm to a prisoner by another;
>
> (4) Allow a prisoner to escape;
>
> (5) Fail to observe any lawful and reasonable regulation for the management of the detention facility.

(*Id.* at PAGEID # 23, ¶ 27 (citing Ohio Rev. Code § 2921.44).) Further, reading the Amended Complaint liberally, it appears the Plaintiffs reference Defendant DeWine by alleging that the Defendants, collectively, "create [or] enforce policies" that serve as the basis of their claims. (*Id.* at PAGEID # 28, ¶ 50.) This last allegation is critical, as it appears that Plaintiffs seek to assert claims against Defendant DeWine because he "create[d]" certain policies or restrictions in response to the COVID-19 pandemic. (*Id.*)

Such allegations are insufficient to state a claim against Defendant DeWine, because Plaintiffs have failed to allege that Defendant DeWine has any specific connection to the actions which Plaintiffs contend are unconstitutional. Construing the Complaint liberally in Plaintiffs' favor, the Court can only discern that Plaintiffs implicate Defendant DeWine based on his general supervisory powers as the Governor of Ohio. "This Court, and others, have already found such general supervisory powers insufficient to subject a state official to suit." *Smith v. DeWine*, 476 F. Supp. 3d 635, 654 (S.D. Ohio 2020) (dismissing claims against Defendant DeWine where "Plaintiffs have failed to plead the Governor's responsibility for the direct enforcement over the ODRC's policies beyond his general executive authority.") (collecting cases). "While the Governor may direct broad policy initiatives to various state agencies such as the ODRC, those agencies retain responsibility for direct enforcement of those policies." *Id.* at 654. Accordingly, it is **RECOMMENDED** that Plaintiffs' claims against Defendant DeWine in his official capacity be **DISMISSED**.

### 2. Remaining Defendants

Plaintiffs also assert claims against Defendants Acton, Chambers-Smith, Moore, Bobby, and Andrews (collectively, the "State Defendants"), and Defendants Stanforth, Gray, Murphy, Haley, and Taylor (collectively, the "BCI Defendants"). For the most part, however, Plaintiffs' allegations do not refer to any of these Defendants by name, as Plaintiffs instead discuss the conditions at BCI in general terms. Plaintiffs allege that COVID-19 has spread to Plaintiffs (and other inmates at BCI) because prison officials do not properly test, isolate, or quarantine infected individuals (including, but not limited to, Defendant Gray, the Warden of BCI. (*Id.* at PAGEID # 22, ¶¶ 21-25.) Plaintiffs allege that social distancing protocols are not followed, both in the inmates' living spaces and in the common areas of BCI, which Plaintiffs allege violates various provisions of the Ohio Administrative Code. (*Id.* at PAGEID ## 23-25.) Plaintiffs also allege that the Defendants have improperly denied inmates from scheduling chronic care medical appointments and most dental appointments. (*Id.* at PAGEID # 26, ¶ 38.)[3] Plaintiffs further allege that the Defendants did not issue masks and mandate handwashing until April 2020, and that housing units are not provided with proper or adequate cleaning materials. (*Id.* at PAGEID # 28, ¶¶ 49, 53.)

---

[3] Plaintiffs do not allege that ***they*** have been denied chronic care medical appointments or dental appointments. The Complaint, however, attaches a sworn Declaration by Plaintiff Goodson. (*See* ECF No. 1-1 at PAGEID ## 47-51.) It appears that approximately eight (8) paragraphs are missing from Plaintiff Goodson's Declaration, but from what the Court can review it appears that Plaintiff Goodson alleges having been denied medical treatment for a lung condition. (*Id.* at PAGEID # 51, ¶¶ 16-20.) It is unclear from Plaintiff Goodson's Declaration, however, whether he has been denied the "chronic care" medical appointments referenced in Plaintiffs' Complaint. Notwithstanding the Undersigned's recommendation to dismiss Plaintiffs' claims in their entirety, Plaintiff Goodson is **ADVISED** that he has the right to file a separate action to pursue any claim(s) for medical deliberate indifference that he believes he may have.

For these reasons, Plaintiffs allege that Defendants "purposely and with 'deliberate indifference' choose to allow COVID-19 to run its course with uncertainty." (*Id.* at PAGEID # 29, ¶ 56.)  Plaintiffs allege that "[t]his has resulted in deaths within the inmate population as well as [prison] staff as well as cases of inmates living with the long term effects of an infection from COVID-19 with no medical care or monitoring of potential long term health concerns." (*Id.*) Thus, Plaintiffs allege that the Defendants have violated Plaintiffs' Eighth Amendment rights, by being deliberately indifferent to Plaintiffs' health concerns, and by "creating conditions that would create long term physical and mental health concerns leading to infection with or possible death from COVID-19." (*Id.* at PAGEID ## 27, ¶¶ 44.)

The Eighth Amendment protects all people from "cruel and unusual punishments." U.S. Const. amend. VIII.  As the United States Court of Appeals for the Sixth Circuit recently noted:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being . . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment . . . .

*Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (citing *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989))).

"The Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones, and . . . 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (first quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), then quoting *Helling*, 509 U.S. at 31).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Id.* at 828.

The Eighth Amendment's deliberate indifference framework includes both an objective and subjective prong. *Id.* at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Here, the objective component of Plaintiffs' deliberate indifference claim plainly has been met, for reasons this Court previously has discussed:

> This Court agrees with the other district courts across the country [that] have found COVID-19 to be an objectively intolerable risk of harm to prisoners when it enters a prison. "There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious and fatal harm to prison inmates." *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020); *see also Wilson v. Williams*, No. 4:20-cv-794, —— F.Supp.3d ——, ——, 2020 WL 1940882, at *8, 2020 U.S. Dist. LEXIS 70674, at *19–20 (N.D. Ohio Apr. 22, 2020) (finding petitioners obviously satisfied the objective requirement stating "[a]t this moment a deadly virus is spreading amongst [the prison] population and staff," which can lead to pneumonia, diminished oxygen, organ failure, and death.); *Money,* 453 F.Supp.3d at ——, 2020 WL 1820660 at *18 (noting that that "nobody contests the serious risk that COVID-19 poses to all inmates and prison staff, and even more to the most vulnerable inmates"); *Wilson v. Williams*, 961 F.3d 829, 842 (6th Cir. 2020) (finding a substantial risk of serious harm satisfying the objective element of the Eighth Amendment based on the conditions in an Ohio prison in light of COVID-19).

*Smith*, 476 F.Supp.3d at 662; *see also Perez-Perez v. Adducci*, 459 F. Supp. 3d 918, 926–27 (E.D. Mich. 2020) ("No one can deny that the health risks caused by the pandemic are grave. Objectively, the health risks posed by COVID-19 are abundantly clear. The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death.").

The subjective component, on the other hand, requires inmates to show that prison officials knew of and disregarded an excessive risk, thereby acting with deliberate indifference. *Smith,* 476 F.Supp.3d at 661 (citing *Farmer,* 511 U.S. at 834, 837-38). Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety."

11

*Farmer*, 511 U.S. at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. Thus, prison officials who knew of "a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Wilson*, 961 F.3d at 840 (citing *Farmer*, 511 U.S. at 844). The key inquiry is whether prison officials responded reasonably to the risk. *Id.*

Against this backdrop, it is noteworthy that Plaintiffs do not include specific allegations against **any** of the State Defendants individually. As for the BCI Defendants, Plaintiffs generally allege that each of the BCI Defendants "tested positive for COVID-19," but the only BCI Defendants against whom Plaintiffs assert individual allegations are Defendants Gray and Haley. (ECF No. 1-1 at PAGEID # 28, ¶ 51.) Specifically, Plaintiffs allege that Defendant Gray "tested positive for COVID-19 and is directly responsible for passing the virus to his staff and consequently to the Plaintiffs and other inmates," and that Defendant Gray has not "reduce[d] the population . . . to meet the social distancing requirements" despite a direct order from Defendant Bobby to do so. (*Id.* at PAGEID ## 22, 29, ¶¶ 22, 57.) Plaintiffs also allege that Defendant Haley has expressed "his belief that COVID-19 actually began in [BCI] sometime in the month of November 2019," and "that the masks and hand washing do nothing." (*Id.* at PAGEID # 28, ¶¶ 48-49.)

Plaintiffs' allegations are insufficient to meet the subjective component of Plaintiffs' official capacity claims as a matter of law. This Court previously has held that claims based on the "protective measures taken to protect against the spread of the virus," in the absence of

12

allegations that any of the Defendants exhibited deliberate indifference to plaintiffs' exposure to COVID-19, do not rise to a deliberately indifferent unreasonable failure to act:

> Plaintiffs in this case have failed to allege facts from which the Court can infer a violation of their Eighth Amendment rights. Although the Court is sympathetic to plaintiffs' concerns regarding COVID-19, neither plaintiff asserts that any named defendant exhibited deliberate indifference to either inmate's exposure to COVID-19. **Plaintiffs' general conclusory allegation that the prison system is ill-equipped for social distancing or protecting inmates is insufficient to state a claim.** *See Iqbal*, 556 U.S. at 678. **Furthermore, although plaintiffs allege that defendants were negligent in their response to the virus, negligence is insufficient to state an Eighth Amendment claim.** *See Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). Plaintiffs have otherwise failed to allege facts suggesting that defendants disregarded the risks associated with COVID-19 or were otherwise deliberately indifferent to their health or safety. To the contrary, as noted above, plaintiffs complain about numerous protective measures taken to protect against the spread of the virus, maintaining that such measures also violate their constitutional rights. Accordingly, the allegations in the complaint are insufficient to state an actionable claim under the Eighth Amendment.

*McCrary v. DeWine,* No. 1:20-CV-388, 2021 WL 320737, at *4 (S.D. Ohio Feb. 1, 2021) (emphasis added; internal footnote omitted). Supporting this conclusion is the fact that "the CDC's own guidance 'presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings.'" *Blackburn v. Noble*, No. 3:20-cv-46, 2020 WL 4758358, at *6 (E.D. Kent. Aug. 17, 2020) (citing *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020)). Further,

> **the fact that COVID-19 has spread among [] inmates does not establish . . . the necessary state of mind to satisfy the subjective deliberate indifference prong as to the safety measures implemented to protect inmates from COVID-19**. *See Farmer*, 511 U.S. at 844, 114 S.Ct. 1970 (the fact that "the harm ultimately was not averted" does not demonstrate deliberate indifference); *Wilson*, 961 F.3d at 841 (finding "while the harm imposed by COVID-19 on inmates at Elkton ultimately [is] not averted, the BOP has responded reasonably to the risk and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights," noting evidence that the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, providing mask, and engaging in efforts to expand testing "demonstrate the opposite of a disregard of a serious health risk") (internal quotations and citations omitted).

13

*Id.* at *7 (emphasis added; internal footnote omitted).

To that end, this Court has found that Defendant Chambers-Smith, Director of the ODRC, acted reasonably in responding to the COVID-19 pandemic and engaged in "an extensive effort to combat this new disease and protect the prisoners' health and safety":

> It is clear that the Director was aware of the risk COVID-19 presented based on her statements about the disease and the extensive actions she took in response. The key question is whether the Director "responded reasonably to th[is] risk." *Wilson*, 961 F.3d at 840 (citing *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970). Importantly, the resultant harm, while serious and concerning, does not establish a liable state of mind. *See Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (finding the district court incorrectly "treated an increase in COVID-19 infections as proof that the defendants deliberately disregarded an intolerable risk"). Putting aside the resultant harm, the evidence shows the Director responded reasonably to the risk.
>
> The Director began preparing for the introduction of COVID-19 into Ohio's prisons before COVID-19 was even confirmed in the United States. (Def. Director Resp. Prelim. Inj. at Ex. A, ¶ 8.) After COVID-19 entered the United States and then Ohio's prison system, the Director continued to coordinate a response among all of ODRC's facilities which included educating staff and inmates, tracking and distributing PPE, implementing social distancing measures among staff and inmates, increasing cleaning and sanitizing, screening visitors, staff, and inmates, cancelling visitation, quarantining those with symptoms, and implementing other policies designed to prevent COVID-19's spread. (See id.) The Sixth Circuit has previously held actions such as these a reasonable response. *See e.g., Wilson*, 961 F.3d at 840 (finding the Bureau of Prisons' response to COVID-19 including screening for symptoms, educating staff and inmates, cancelling visitation, quarantining new inmates, implementing cleaning, providing disinfectant, and more, a reasonable response); *Wooler v. Hickman Cnty.*, 377 F. App'x 502, 506 (6th Cir. 2010) (holding a jail nurse's actions of cleaning every cell, quarantining infected inmates, and distributing information about a bacterial disease precluded a finding of deliberate indifference).
>
> Other courts around the country have also found similar actions taken in response to COVID-19 enough to preclude a finding of deliberate indifference. *See e.g., Valentine*, 956 F.3d at 802 (noting that the prison officials took measures recommended by the CDC and the plaintiffs offered no evidence they subjectively believed those actions were inadequate); *Swain*, 958 F.3d at 1089 (noting that neither the resultant harm in COVID-19 infections or the inability to achieve social distancing constituted a state of mind more blameworthy than negligence); *Money*, 453 F.Supp.3d at ——, 2020 WL 1820660 at *18 (finding the plaintiffs did not have a chance of success on this claim because the prison officials had come forth with a lengthy list of actions they had taken to try and protect inmates from COVID-19 and "the record simply [did] not support any suggestion that [the defendants]

14

> ha[d] turned the kind of blind eye and deaf ear to a known problem that would indicate 'total unconcern' for the inmates' welfare" (citing *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012))). There is no evidence that the Director subjectively believed her actions were inadequate or that she indicated a total concern for the inmates' welfare.

*Smith*, 476 F.Supp.3d at 663. The Court takes judicial notice of those findings here, and extends those findings to the Defendants in this case:

> "[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record." *United States v. Mont*, 723 Fed. Appx. 325, 327 n.3 (6th Cir. 2018) (citing *Lyons v. Stovall*, 188 F.3d 327, 332, n.3 (6th Cir. 1999) (brackets, quotation marks, and citation omitted)). While this doctrine typically does not extend to the factual findings of another court, notice may be taken of "proceedings in other courts . . . if those proceedings have a direct relation to matters at issue." *United States v. Neal*, 577 Fed. Appx. 434, 452 n. 11 (6th Cir. 2014) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (ellipsis and emphasis in original)).

*Schneider v. Credit Human Federal Credit Union*, No. 4:20-cv-1747, 2021 WL 147050, at *1 n.2 (N.D. Ohio Jan. 15, 2021).

Although Plaintiffs may disagree with the sufficiency of Defendants' actions in response to COVID-19, they have not alleged facts sufficient to demonstrate that the Defendants acted with "deliberate indifference" within the meaning of the Eighth Amendment. Accordingly, it is **RECOMMENDED** that Plaintiffs' official capacity claims be **DISMISSED** in their entirety.

B.   **Individual Capacity Claims**

Next, the Court turns to whether Plaintiffs have plausibly alleged claims against Defendants in their individual capacities. As a preliminary matter, the Court notes that despite asserting claims against each Defendant in their "personal capacities," the Complaint does not contain any specific allegations that Defendant DeWine or any of the State Defendants was ***personally*** involved in any alleged violation of Plaintiffs' rights, which is required to state a § 1983 individual capacity claim. *Cline v. Wiedimen*, No. 2:21-CV-112, 2021 WL 123006, at *5 (S.D. Ohio Jan. 13, 2021), *report and recommendation adopted*, No. 21CV-112, 2021 WL

15

391724 (S.D. Ohio Feb. 4, 2021).  Accordingly, it is **RECOMMENDED** that any individual-capacity claims against Defendant DeWine and the State Defendants be **DISMISSED**.

Regarding the BCI Defendants, the Complaint only identifies Defendants Gray and Haley as having any personal involvement in Plaintiffs' claims.  While Plaintiffs generally allege that each of the BCI Defendants "tested positive for COVID-19," merely testing positive for COVID-19 does not rise to the level of personal involvement needed to state a claim upon which relief can be granted.  (ECF No. 1-1 at PAGEID # 28, ¶ 51.)  Plaintiffs also allege that they "[a]ll . . . have contracted COVID-19 at least once" and "[a]ll were denied treatment," but Plaintiffs do not connect such allegations to Defendants Stanforth, Murphy, or Taylor individually.  (*Id.* at PAGEID # 29, ¶ 59.)  Accordingly, it is **RECOMMENDED** that any individual-capacity claims against Defendants Stanforth, Murphy, and Taylor be **DISMISSED**.  Plaintiffs' individual-capacity claims against Defendants Gray and Haley, however, merit further analysis.

"The [Eighth] Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates . . . ."  *Farmer*, 511 U.S. at 932-33 (internal quotation marks and citations omitted); *see also Helling*, 509 U.S. at 33 (quoting *DeShaney*, 489 U.S. at 200) (holding that the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

Such claims under the Eighth Amendment require a plaintiff "to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation." *Helling*, 509 U.S. at 35.  To satisfy the objective component for a claim based upon a failure to prevent harm, "the inmate must show he is incarcerated under conditions posing a substantial risk of

serious harm." *Farmer*, 511 U.S. at 834 (citations omitted). "To satisfy the subjective component, an inmate must show that prison officials had a sufficiently culpable state of mind." *Berksire v. Beauvais*, 928 F.3d 520, 535 (6th Cir. 2019) (internal quotation marks and citations omitted). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> [T]hat state of mind is one of deliberate indifference to inmate health or safety. Although the deliberate indifference standard describes a state of mind more blameworthy than negligence, this standard is satisfied if the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (internal quotation marks and citations omitted)).

Again, the objective prong is satisfied here as "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death." *Wilson*, 961 F.3d at 840. Plaintiffs have failed, however, to allege facts upon which the Court could rely to conclude the subjective prong is satisfied for Plaintiffs' claims against Defendants Gray or Haley. In fact, neither the Complaint nor the exhibits to Plaintiff's Complaint provide information or context from which the Court could reasonably infer that either Defendant Gray or Defendant Haley was ***personally*** involved in any alleged violation of Plaintiffs' rights. *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct") (internal quotation omitted).

With respect to Defendant Gray, for example, Plaintiffs merely allege that he "tested positive for COVID-19 and is directly responsible for passing the virus to his staff and consequently to the Plaintiffs and other inmates," and that he has not "reduce[d] the population .

17

. . to meet the social distancing requirements" despite a direct order from Defendant Bobby to do so. (ECF No. 1-1 at PAGEID ## 22, 29, ¶¶ 22, 57.) Even assuming, *arguendo*, that Defendant Gray was "responsible" for passing COVID-19 to others, Plaintiffs have failed to allege that Defendant Gray had a sufficiently culpable state of mind. Similarly, with respect to Defendant Haley, Plaintiffs merely allege that he expressed "his belief that COVID-19 actually began in [BCI] sometime in the month of November 2019," and "that the masks and hand washing do nothing." (*Id.* at PAGEID # 28, ¶¶ 48-49.) Even taking Plaintiffs' allegations as true, Plaintiffs have failed to allege that Defendant Haley could have violated Plaintiffs' rights by expressing such things. In short, Plaintiffs' allegations fail to demonstrate that Defendants Gray and Haley consciously disregarded a serious risk of harm to Plaintiff. *See Cameron v. Bouchard,* 815 F. App'x 978, 984 (6th Cir. 2020) ("The official must have a subjective 'state of mind more blameworthy than negligence,' akin to criminal recklessness.") (quoting *Farmer*, 511 U.S. at 835, 938-40).

Because Plaintiffs have failed to plausibly allege that any of the Defendants acted or failed to act with deliberate indifference as required to demonstrate the subjective component of an Eighth-Amendment claim, it is **RECOMMENDED** that any individual-capacity claim Plaintiffs intended to advance be **DISMISSED** pursuant to § 1915(e)(2).

## IV.

This matter is also before the Court for consideration of Plaintiffs' Motion to Appoint Counsel, ECF No. 4. Although this Court has statutory authority under 28 U.S.C. § 1915(e) to appoint counsel in a civil case, appointment of counsel is not a constitutional right. *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (citation omitted). Rather, "[i]t is a privilege that is justified only by exceptional circumstances." *Id.* at 606. The Court has evaluated whether such

exceptional circumstances exist in this case and determines that the appointment of counsel is not warranted at this juncture. Accordingly, Plaintiffs' Motion to Appoint Counsel, ECF No. 4, is **DENIED WITHOUT PREJUDICE**.

**V.**

For these reasons, the Undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiffs' claims in their entirety. That recommendation notwithstanding, Plaintiff Goodson is **ADVISED** that he has the right to file a separate action to pursue any claim(s) for medical deliberate indifference that he believes he may have.

The Court also **DENIES WITHOUT PREJUDICE** Plaintiffs' Motion for the Appointment of Counsel, ECF No. 4.

The Clerk is **DIRECTED** to send a copy of this Order to the Ohio Attorney General's Office, Corrections Litigation Department, 150 E. Gay Street, 16th Floor, Columbus, Ohio 43215.

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, it may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

    **IT IS SO ORDERED.**

Date: April 12, 2021          */s/ Elizabeth A. Preston Deavers*
                                             **ELIZABETH A. PRESTON DEAVERS**
                                             **UNITED STATES MAGISTRATE JUDGE**